IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DOE & AL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-1013-X-BN |
| | § | |
| ALLASSANE DRAMANE OUATTARA | § | |
| and DOMINIQUE CLAUDINE | § | |
| NOUVIAN OUATTARA, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff John Doe & Al, a pseudonym for an individual who is alleged to be a citizen of Côte d'Ivoire residing in the United States, paid the fee to file a *pro se* complaint against Defendants Allassane Dramane Ouattara and Dominique Claudine Nouvian Ouattara, the current president of Côte d'Ivoire and his wife, in their individual capacities, invoking the Alien Tort Statute (the "ATS") and the Torture Victim Protection Act (the "TVPA") and alleging claims for Violations of the Law of Nations (under the ATS), Torture and Extrajudicial Killing (under the TVPA), and Acts of International Terrorism. *See* Dkt. No. 3.

United States District Judge Brantley Starr referred the complaint to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

While Plaintiff paid the applicable filing fee to bring this action, to the extent that Plaintiff asserts a claim that may proceed in a court in the United States, the

allegations in support of such a claim are conclusory and should not be allowed to proceed as currently pleaded. But, while the Court should dismiss the complaint *sua sponte* for the reasons set out below, it also should allow Plaintiff a reasonable time to file an amended complaint to, if possible, remedy the deficiencies set out below.

## Applicable Background

"Plaintiff sues Defendant[s] in [their] individual capacit[ies] for violations of international law and for personally participating in or enabling acts of terrorism and gross human rights violations including Genocide and murder of 3,000 civilians," explains that,

> [d]uring the civil war in Côte d'Ivoire (approximately 2010-2011), forces under the command or control of Defendant[s] committed widespread and systematic acts of violence, including extrajudicial killings, torture, and other gross human rights abuses against civilians.
> Defendant[s were] in a position of authority and either ordered, authorized, or failed to prevent such acts, despite having knowledge or reason to know of them.
> Plaintiff and Plaintiff's family were direct victims of these acts, including injury, death, and genocide of 3,000 peoples.
> Defendant[s] exercised effective command and control over these forces and either directly ordered or failed to prevent these acts, despite clear knowledge of their occurrence.
> Plaintiff and Plaintiff's family were direct victims of these acts.

Dkt. No. 3 at 2 (cleaned up).

In support of the claim pleaded under the ATS, for Violations of the Law of Nations, Plaintiff further alleges that "[t]he acts committed under Defendant[s'] authority constitute terrorism, crimes against humanity, and war crimes in violation of international customary law." *Id.* at 3.

In support of the claim pleaded under the TVPA, for Torture and Extrajudicial Killing, Plaintiff further alleges that "Defendants, acting under color of law, [are]

responsible for acts of torture, cruel treatment, and extrajudicial killings committed against civilians, including Plaintiff's family members." *Id.*

And, in support of the standalone claim for Acts of International Terrorism, Plaintiff further alleges that "Defendants and [their] agents engaged in acts intended to intimidate and terrorize civilian populations for political purposes, constituting international terrorism as defined by customary international law and applicable human rights conventions," and that "[t]hese acts resulted in grave harm … , including emotional trauma, loss of family, forced displacement, and physical injury and the death of 3,000 peoples." *Id.*

And Plaintiff seeks monetary damages ($3 billion) and declaratory and injunctive relief. *See id.*

This is the substantive entirety of Plaintiff's complaint.

## Legal Standards

Plaintiff's paying the statutory filing fee prevents judicial screening under 28 U.S.C. § 1915.

But the Court may still "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

Considering a dismissal under Rule 12(b)(6), the Court "accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g., Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and

conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

So, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

And "[t]he broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citations omitted).

These findings, conclusions, and recommendations provide notice, and the period for filing objections to them affords Plaintiff an opportunity to respond to show how the claims may be amended to allege a plausible cause of action. *See, e.g.*, *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *2 (N.D. Tex. Oct. 30, 2018) (citations omitted), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

## Discussion

### I.    Plaintiff's claims under the ATS as currently pleaded are subject to dismissal.

Starting with the ATS, it

> "provides, in full, that '[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.'" *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 113-14 (2013) (quoting 28 U.S.C. § 1350). Although the statute "provides district courts with jurisdiction to hear certain claims," it "does not expressly provide any causes of action." *Id.* at 115. Rather, the ATS provides jurisdiction for a "modest number of international law violations" that are derived from federal common law. *Id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004)).

*Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 192 (5th Cir. 2017) (citations modified); *accord Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 631 (2021) ("Although this jurisdictional statute does not create a cause of action, ... courts may exercise common-law authority under this statute to create private rights of action in very limited circumstances." (citations omitted)).

As such, "[t]he ATS is akin to 42 U.S.C. § 1983 insofar as it does not itself create substantive rights, but rather provides a procedural vehicle through which

torts recognized either under the law of nations or treaties of the United States may be actionable." *Awan v. United States*, No. 16 Civ. 871 (CBA) (VMS), 2020 WL 1172634, at *7 (E.D.N.Y. Feb. 3, 2020) (citations omitted), *rec. adopted*, 2020 WL 1166448 (E.D.N.Y. Mar. 11, 2020).

And "[t]he principal objective of the statute, when first enacted, was to avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen.*" Jesner v. Arab Bank, PLC*, 584 U.S. 241, 255 (2018) (citing *Sosa*, 542 U.S. at 715-19; *Kiobel*, 569 U.S. at 123-24).

But the ATS does not apply extraterritorially. That is, the United States Supreme Court "has established that the 'presumption against extraterritoriality' governs the ATS's reach." *Farah v. Gov't of Republic of Somaliland*, No. 1:23-cv-1205 (ACR), 2024 WL 3985165, at *8 (D.D.C. Aug. 29, 2024) (quoting *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 514 (D.C. Cir. 2018) (quoting *Kiobel*, 569 U.S. at 124)).

"ATS claims involving extraterritorial activity can displace the presumption only if the claims touch and concern the territory of the United States with sufficient force." *Id.* (quoting *Kaplan*, 896 F.3d at 514).

And, so, a court should examine the complaint's factual allegations, "to determine whether claims clear[] this hurdle," *id.* (citing *Nestlé*, 593 U.S. at 634), as "[t]he Supreme Court has treated extraterritoriality in the ATS context as a jurisdictional matter," *id.* (cleaned up; collecting cases).

Here, where the only inference that the Court may reasonably draw is that the harms that Plaintiff asserts occurred in Côte d'Ivoire, no facts alleged in the complaint overcome the presumption against extraterritoriality that limits the reach of the ATS. *See id.* at *9 (observing that "[t]he extraterritoriality analysis focuses on the location of the conduct at issue," so "a plaintiff must [ ] establish that her claims touch and concern the territory of the United States" (cleaned up)).

## II. Plaintiff's claims under the TVPA as currently pleaded are subject to dismissal.

Unlike the ATS, "[t]he TVPA – which is codified as a note following the ATS – creates an express cause of action for victims of torture and extrajudicial killing in violation of international law." *Jesner*, 584 U.S. at 256.

> A TVPA claim requires proof that (1) an individual (2) subjected the plaintiff to torture (3) under authority or color of law of a foreign nation. *See* 28 U.S.C. § 1350 note § 1(a); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 459 (2012) ("[T]he Act does not impose liability on perpetrators who act without authority or color of law of a foreign state.").
> The Act sets a 10-year statute of limitations. *See* 28 U.S.C. § 1350 note § 2(c). And it requires a plaintiff to first exhaust "adequate and available remedies in the place in which the conduct giving rise to the claim occurred." *Id.* at note § 2(b).

*Reynolds v. Higginbotham*, No. 19-cv-5613, 2022 WL 864537, at *5 (N.D. Ill. Mar. 23, 2022).

And, to the extent that Court may set aside the limitations and exhaustion issues for now and focus just on the facts alleged in support of a claim under the TVPA, Plaintiff has not alleged a plausible claim. That is because the few facts alleged in the complaint are little more than legal conclusions or assertions devoid of factual development, neither of which can be accepted as true or support a TVPA

claim as substantively plausible. *Cf. Farah*, 2024 WL 3985165, at *10 ("Plaintiff's Complaint does not state a plausible claim as to Mr. Goth. Plaintiff makes no specific allegations about Mr. Goth's conduct – only a broad assertion that he, along with the other U.S.-based Defendants, helped track and target Somali Americans like Plaintiff's father. For the reasons described above, the Court need not treat that conclusory allegation as true, and nothing else in Plaintiff's filings provides any basis – let alone a reasonable one – to 'infer[ ] that [Mr. Goth] is liable for the misconduct alleged.' *Iqbal*, 556 U.S. at 678. The Court therefore dismisses this claim under Rule 12(b)(6).")

## III.    Plaintiff's claim for Acts of International Terrorism as currently pleaded is subject to dismissal.

That leaves Plaintiff's claim for Acts of International Terrorism, which stands alone; it is tethered neither to the ATS nor the TVPA.

And, to the extent that Plaintiff alleges a violation not of a federal statute nor of a tort actionable under the ATS, Plaintiff faces a significant hurdle.

Because, "[w]ith the demise of federal general common law, a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress." *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

And, "[i]n both statutory and constitutional cases, [the judicial] watchword is caution. For example, in *Jesner*," the Supreme Court "expressed doubt about [its] authority to recognize any causes of action not expressly created by Congress" and "declined to recognize a claim against a foreign corporation under the Alien Tort

Statute." *Hernandez*, 589 U.S. at 101 (citations omitted); *cf. Jesner*, 584 U.S. at 267 ("Petitioners contend that, instead of the TVPA, the most analogous statute here is the Anti-terrorism Act. That Act does permit suits against corporate entities. *See* 18 U.S.C. §§ 2331(3), 2333(d)(2). In fact, in these suits some of the foreign plaintiffs joined their claims to those of United States nationals suing Arab Bank under the Anti–terrorism Act. But the Anti-terrorism Act provides a cause of action only to 'national[s] of the United States' and their 'estate, survivors, or heirs.' § 2333(a). In contrast, the ATS is available only for claims brought by 'an alien.' 28 U.S.C. § 1350. A statute that excludes foreign nationals (with the possible exception of foreign survivors or heirs) is an inapt analogy for a common-law cause of action that provides a remedy for foreign nationals only.").

But, even if there is a basis for this claim, "nothing else in Plaintiff's [complaint] provides any basis – let alone a reasonable one – to infer that [Defendants are] liable for the misconduct alleged" in support of this claim. *Farah*, 2024 WL 3985165, at *10 (cleaned up).

## Recommendation

The Court should dismiss the complaint *sua sponte* but allow Plaintiff an opportunity to file an amended complaint within a reasonable time.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 29, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE